**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

HASSAN FAWAZ,

    Plaintiff,

v.

                               Case No. 14-12650

                               HON. DENISE PAGE HOOD

CELLCO PARTNERSHIP
d/b/a Verizon Wireless,

    Defendant.
_____/

**ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT [Docket No. 12]**

Now before the Court is a Motion for Summary Judgment filed on May 22, 2015 by Defendant Cellco Partnership, d/b/a Verizon Wireless ("Defendant") [Docket No. 12]. Plaintiff Hassan Fawaz ("Plaintiff") filed a Response to this Motion [Docket No. 16, filed July 13, 2015], to which Defendant filed a Reply [Docket No. 17, filed July 27, 2015]. A hearing on the Motion for Summary Judgment was held on August 5, 2015.

**I.    BACKGROUND**

Plaintiff brought this action against Defendant, his former employer. Plaintiff alleges that Defendant terminated him in retaliation for filing complaints with Stacey Sturgill ("Sturgill") from Human Resources, Craig Ritchie ("Ritchie"), Sturgill's

supervisor, and Alertline (Defendant's compliance hotline) during and immediately after alleged discriminatory comments were made by Sturgill during a June 11, 2013 interview with Plaintiff.

Plaintiff began employment with Defendant on July 7, 2006. He served in a variety of positions over the next seven years, including store manager. At the time of the incident that forms the basis for this action, he was serving as a Government Account Executive.

On November 23, 2011, a customer of Defendant (hereinafter, "HB") reported a phone lost or stolen, and the phone was added to Defendant's "do not activate" list. A phone can be activated from the "do not activate" list only in accordance with Defendant's policies. Pursuant to those policies, only the customer who reported the phone lost or stolen (or a manager calling on that customer's behalf) can authorize the removal of a phone from the "do not activate" list. [Docket No. 12, Ex. 1, Pl. Dep. at 83-84, 89-90, 102; Ex. 3, Brooks Dec., at ¶ 5; Ex. 4, Adding Policy] If a Defendant manager removes a phone from the list for a customer, customer service will follow the manager's instructions regarding the phone and will not insist on speaking with the customer. [Docket No. 12, Ex. 3, Brooks Dec., at ¶ 5]

Customer service must verify with the customer or a Defendant manager that the customer seeking removal is the customer that reported the phone lost or stolen by authenticating the customer's last four social security numbers, account

password, or both. [Docket No. 12, Ex. 1, Pl. Dep., 88-90, 102; Ex. 2, Brooks Dep., 164-165; Ex. 3, Brooks Dec., ¶ 6; Ex. 5, Sturgill Dep., 95-97] Defendant's managers (including Plaintiff) had access to a billing database called NETACE. [Docket No. 12, Ex. 1, Pl. Dep., 29-30; Ex. 3, Brooks Dec., ¶ 7] By searching a phone's electronic serial number ("ESN") in NETACE, a manager would know who reported a phone lost or stolen, the last four digits of that customer's social security number, and that customer's account passwords. *Id.*

Defendant tracks and records all changes made to customer accounts, including the details of when and how phones are added to or removed from the "do not activate" list, on a database called "ACSS." [Docket No. 12, Ex. 1, Pl. Dep., 59-60, 93-94; Ex. 3, Brooks Dec., at ¶ 4] Notes about every customer call are entered in ACSS by Defendant's automated system or by the representative handling the call. *Id*. Plaintiff was trained on and "religiously read and taught" Defendant's Code of Conduct. [Docket No. 12, Ex. 1, Pl. Dep., 19; Ex. 8, Pl. Learning History]

A few months after HB reported his phone lost or stolen, Plaintiff's brother (who does not work for Defendant) purchased that phone from a coworker of Plaintiff's brother. At the time Plaintiff's brother purchased the phone reported lost or stolen by HB, that phone was still on the "do not activate" list. According to Defendant's records, its ACSS records show that Plaintiff, while a store manager, (1) called Defendant's customer service, (2) used his position and his ability to

3

access the customer's account information to remove the phone from the "do not activate" list, and (3) activated it on his employee account. [Docket No. 12, Ex. 9, ACSS; Ex. 2 Brooks Dep., 147, 149, 150, 159-160, 182-184; Ex. 5, Sturgill Dep., 15, 30-39, 53-58, 77-78, 85, 93-98; Ex. 10, Brooks 6/3 Emails.)  Specifically, the ACSS records show that:

- Plaintiff's social security number was entered to verify his identity with Defendant's automated system. [Docket No. 12, Ex. 9, ACSS, 1107]

- Plaintiff reported to Customer Service Representative John Pratt ("Pratt") that the customer "INADVERTENTLY ADDED [A PHONE] TO [THE] LOST/STOLEN LIST." *Id*. at 1111.

- Plaintiff requested the phone be removed from the list and added to his employee account. *Id*.

- Pratt pulled up the customer's account during his call with Plaintiff so that the customer's social security number, account password, or both could be verified. *Id.* at 1116.

- Pratt transferred Plaintiff to technical support to remove the phone from the "do not activate" list and activate it on Plaintiff's employee account. *Id*. at 1111-1113.

- The ESN of HB's phone is the same ESN activated on Plaintiff's employee account immediately after that phone was removed from the "do not activate" list. *Id*. at 1111-1115.

Notwithstanding this activity, Defendant contends it was unaware of the removal of the HB phone from the "do not activate" list for more than a year.

4

On February 26, 2013, Defendant received an anonymous, one-page complaint about Plaintiff's management practices. Defendant assigned Tina Brooks from Corporate Security to investigate the allegations pertaining to her department ─ allegations of integrity, theft, safety concerns, and improper sales ─ and Sturgill to investigate the complaints regarding employee relations. [Docket No. 12, Ex. 2, Brooks Dep., 28-31, 64-65, 98; Ex.5, Sturgill Dep., 16-17, 25] Prior to this investigation, Plaintiff had never met Brooks and had interacted—but had no issues—with Sturgill. [Docket No. 12, Ex. 1, Pl. Dep., 7-8] Of the various allegations investigated by Sturgill and Brooks, they only substantiated an allegation that Plaintiff had improperly taken SIM cards out of his store's inventory. [Docket No. 12, Ex. 2, Brooks Dep., 107-108; Ex. 5, Sturgill Dep., 30-31, 78; Ex. 14, Alertline] Brooks found no evidence at that time of Plaintiff's call to customer service. [Docket No. 12, Ex. 1, Pl. Dep., 58-59; Ex. 2, Brooks Dep., 114] Although taking the SIM cards was not a terminable offense, Brooks found some of Plaintiff's responses to the investigation regarding his management practices to be inconsistent and that caused her to look closer at his phone accounts. [Docket No. 12, Ex. 2, Brooks Dep., 145-146; Ex. 5, Sturgill Dep., 31; Ex. 18, Corporate Security Summary]

When Brooks searched Plaintiff's accounts in Defendant's databases, she found the ACSS records detailing the step-by-step account of Plaintiff's call to

customer service (as described above). [*See, e.g.*, Docket No. 12, Ex. 2, Brooks Dep., 145-147; Ex. 9, ACSS] Brooks gathered and analyzed the evidence, sent Sturgill some of the ACSS notes, and discussed the details of the incident with Sturgill. [Docket No. 12, Ex. 2, Brooks Dep., 150-151, 159-160; Ex. 5, Sturgill Dep., 38-39, 85, 97-98; Ex. 9, ACSS; Ex. 10, Brooks 6/3/13 Emails][1]

On June 11, 2013, Brooks interviewed Plaintiff three times and gave him an opportunity to explain his actions. [Docket No. 12, Ex. 1, Pl. Dep., 75-78; Ex. 2, Brooks Dep., 82, 121] Sturgill only participated in the last interview. (*Id*.) When Sturgill and Brooks questioned Plaintiff about the ACCS notes that showed he removed HB's phone from the "do not activate" list, Plaintiff gave several conflicting explanations:

- Plaintiff initially denied knowing about the phone and denied calling customer service. This response was contrary to: (a) ACSS records that showed that he called and entered his social security number to identify himself, and (b) Pratt's notes that he was talking to "Hassan." [Docket No. 12, Ex. 5, Sturgill Dep., 81-92; Ex. 19, Sturgill Notes; Ex. 9, ACSS]

- Plaintiff then claimed his brother must have called customer service and impersonated Plaintiff. [Docket No. 12, Ex. 1, Pl. Dep., 81-82; Ex.

---

[1] It is undisputed that Plaintiff: (a) never met HB, (b) was not authorized to use HB's account information to remove HB'S phone from the "do not activate" list, and (c) did not have the authority to activate the phone on his employee account. [Docket No. 12, Ex. 1, Pl. Dep., 9, 11] Plaintiff also knew Defendant's policies required him to use his best efforts to recover the phone from his brother and return it to HB. *Id*. at 84-85. Plaintiff also knew that improperly removing the phone from the "do not activate" list and activating it on his employee account violated Defendant's Code of Conduct. *Id*. at 88-90, 97-101.

6

12, Pl. 6/11/13 Statement; Ex. 2, Brooks Dep., 152, 154, 167-168; Ex. 5, Sturgill Dep., 81-92; Ex. 20 Sturgill Dec., ¶ 4-5] In an effort to explain why Pratt would have notated he was speaking with "Hassan," Plaintiff said Pratt likely confused his name (Hassan) with his brother's name (Hussein). In response, Sturgill stated: "isn't that convenient." [Docket No. 12, Ex. 1, Pl. Dep., 16; Ex. 16, Pl. Alertline; Ex. 21, Pl. 2nd 6/11/13 email]

- Plaintiff ultimately admitted that he called "to get help" activating HB's phone, but Plaintiff claimed the customer service representative was to blame if anything was improper. [Docket No. 12, Ex. 1, Pl. Dep., 81-82; Ex. 12, Pl. 6/11/13 Statement; Ex. 5, Sturgill Dep., 81-92; Ex. 19, Sturgill Notes]

During the June 11, 2013 joint interview, Sturgill and Brooks accused Plaintiff of being dishonest because his responses did not match the evidence. [Docket No. 12, Ex. 1, Pl. Dep., 17; Ex. 2, Brooks Dep., 167-168; Ex. 5, Sturgill Dep., 77-79, 80-81, 84-85; Ex. 9, ACSS] Plaintiff became angry, sat with his hands crossed, and barely responded to further questions. [Docket No. 12, Ex. 1, Pl. Dep., 15-18; Ex. 5, Sturgill Dep., 108-109] In Plaintiff's final written statement, he admitted that either he or his brother activated the phone, though Plaintiff denied knowing the phone was on the "do not activate" list. [Docket No. 12, Ex. 1, Pl. Dep., 81-82; Ex. 2, Brooks Dep., pp. 175-176; Ex. 12, Pl. 6/11/13 Statement]

Defendant claims that, immediately following the interview, Sturgill concluded Plaintiff should be discharged and Brooks agreed. [Docket No. 12, Ex. 2, Brooks Dep., 82-83, 136, 167-168, 181; Ex. 5, Sturgill Dep., 68-71] Sturgill and Brooks determined that both Plaintiff's denial of calling customer service and his

excuse about his brother having called were not credible, *id.*, and even if Plaintiff's brother had made the call, Sturgill and Brooks concluded Plaintiff was ultimately responsible because the information used during the phone call meant that Plaintiff had revealed customer information to his brother. [Docket No. 12, Ex. 5, Sturgill Dep., 58; Ex. 13, EPP Terms]

According to Defendant, about 45 minutes to two hours after the interview, Plaintiff made the following complaints:

- He told his immediate supervisor he was treated poorly without going into any details. [Docket No. 12, Ex. 1, Pl. Dep., 21-24]

- He emailed Ritchie supervisor, to report that the investigation "seem[ed] more like harassment than an investigation" due to comments "regarding not believing my statements and calling my name being similar to my brother's convenient." [Docket No. 12, Ex. 21, Pl. 2nd 6/11/13 email]

- He called Verizon's Alertline, saying Sturgill "questioned him in a harassing and accusatory manner" and that she responded to his answers "in disbelief." [Docket No. 12, Ex. 1, Pl. Dep., 16-17, 20-21; Ex. 16, Pl. Alertline]

- And finally, during an investigation into his complaint, he said Sturgill treated him "a bit aggressive" and "wanted somebody to know about it." [Docket No. 12, Ex. 1, Pl. Dep., 16-17, 20-21; Ex. 22, Bruce Dep., 12, 37]

Plaintiff spoke to no one else at Verizon regarding his interview and he never alleged discrimination or mistreatment because of a protected status. [Docket No. 12, Ex. 1, Pl. Dep., 15-24, 155]

8

Defendant states that the processing of Plaintiff's termination was delayed so Employee Relations (primarily Jeremy Bruce ("Bruce")) could investigate Plaintiff's complaint and insure nothing improper took place. [Docket No. 12, Ex. 5, Sturgill Dep., 66-67, 100-102; Ex. 22, Bruce Dep., 10, 12, 15-17, 18-19, 27-29] After interviewing Sturgill, Brooks, and Plaintiff, Employee Relations found that while Sturgill may have questioned Plaintiff aggressively, nothing improper occurred. [Docket No. 12, Ex. 22, Bruce Dep., 10, 12, 15-17, 18-19; Ex. 24, Bruce Summary]

Defendant then moved forward with its normal termination process. [Docket No. 12, Ex. 5, Sturgill Dep., 11, 22-23, 41-45, 47-48, 63, 66-71, 100-102] Sturgill discussed the reason for the decision and the supporting evidence with management and Human Resources and confirmed with upper level Human Resources that the decision was consistent with similar cases. *Id.* Plaintiff's manager and director both agreed with Sturgill's decision. [Docket No. 12, Ex. 5, Sturgill Dep., at 41-45; Ex. 25, Term. Request] The Executive Director of Human Resources also thought Plaintiff's discharge was justified, but told Sturgill to discuss it with Employee Relations (who oversees a larger region) since he had never dealt with a similar case. [Docket No. 12, Ex. 5, Sturgill Dep., 66-71, 100-102] Employee Relations confirmed that discharge was appropriate. [Docket No. 12, Ex. 5, Sturgill Dep., 66-71, 100-102; Ex. 22, Bruce Dep., 27-39] Jim Handley, another Human Resources

9

Associate, also approved of the decision. [Docket No. 12, Ex. 5, Sturgill Dep., 66-67; Ex. 26, Handley email.)  Sturgill authorized Plaintiff's termination on June 24, 2013, and on June 27, 2013, Plaintiff was formally discharged.

In his Complaint filed on July 7, 2014, Plaintiff brought the following claims: (1) discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 USC §2000(e) *et seq.* (hereinafter "Title VII") (Count I); (2) discrimination in violation Elliott-Larsen Civil Rights Act, MCL § 37.2101, *et seq.* (hereinafter "ELCRA") (Count II); and (3) retaliation in violation of Title VII and the ELCRA (Count III) [Docket No. 1].  On June 12, 2015, the Court signed a Stipulated Order Dismissing Counts I and II of Plaintiff's Complaint with Prejudice [Docket No. 15].  The only remaining count is Count III.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of demonstrating that summary judgment is appropriate. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974).   The Court must

10

consider the admissible evidence in the light most favorable to the nonmoving party. *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007) (emphasis added). To create a genuine issue of material fact, the nonmovant must do more than present "some evidence" of a disputed fact. Any dispute as to a material fact must be established by affidavits or other documentary evidence. Fed. R. Civ. P. 56(c). "If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (citations omitted). Accordingly, a nonmovant "must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact." *Mathieu v. Chun*, 828 F. Supp. 495, 497 (E.D. Mich. 1993) (citations omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

### III. APPLICABLE LAW & ANALYSIS

Defendant seeks to dismiss the Title VII and ELCRA retaliation claims in Count III. The elements of a *prima facie* case of retaliation under Title VII and

11

ELCRA are the same: (a) plaintiff engaged in an activity protected by Title VII or ELCRA; (b) the defendant knew of this exercise of plaintiff's protected rights; (c) defendant consequently took an employment action adverse to plaintiff; and (d) there is a causal connection between the protected activity and the adverse employment action. *See, e.g., Balmer v. HCA, Inc.,* 423 F.3d 606, 613-14 (6th Cir. 2005); *Abbott v. Crown Motor Co., Inc.,* 348 F.3d 537, 542 (6th Cir. 2003); *West v. General Motors Corp.*, 469 Mich. 177 (2003).

If a plaintiff can establish a *prima facie* claim of retaliation, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action. *Spengler v. Worthington Cylinders,* 615 F.3d 481, 492 (6th Cir. 2010). If the defendant can articulate a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to show that the stated reason(s) was mere pretext to mask retaliation. *Id.* "A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000).

With respect to the first element of a *prima facie* case of retaliation, protected activities include "oppos[ing] any . . . unlawful employment practice . . ., or [making] a charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding or hearing" in connection with an unlawful employment practice. 42

U.S.C. § 2000e-3(a). Defendant argues that Plaintiff cannot satisfy the first element of a *prima face* case because Plaintiff did not engage in a protected activity. Defendant asserts that Plaintiff only complained that he was offended when Sturgill said "isn't that convenient" in response to Plaintiff stating that Pratt may have been confused because Plaintiff's name is Hassan and his brother's name is Hussein. Defendant argues that neither this response, nor Plaintiff's subsequent complaints to Ritchie and the Alertline that Plaintiff was harassed and treated in an aggressive manner during the June 11, 2013 interview, constituted an unlawful employment practice.

Plaintiff argues that he engaged in a protected activity when he immediately responded to Sturgill's "isn't that convenient" remark in the June 11, 2013 interview was "inappropriate and offensive." Plaintiff states, "[w]ithout more, he has satisfied the protected activity element of his claim." The Court notes that Plaintiff does not cite any authority for his proposition that stating that a remark is inappropriate and offensive – without more – constitutes protected activity for purposes of Title VII or ELCRA. Plaintiff further argues that he engaged in protected activity when, immediately after the June 11, 2013 interview with Sturgill and Brooks, he complained about Sturgill's comment and their behavior in accord with Defendant's policy, *i.e.*, when he complained to Ritchie, notified the Alertline, and talked to Bruce regarding Sturgill's "isn't that convenient" comment and the June 11, 2013

13

interview. Plaintiff contended that Sturgill's comment was offensive and that he felt he was being harassed, not investigated. Plaintiff asserts:

> A plaintiff "opposing an apparently discriminatory practice does not bear the entire risk that it is in fact lawful; he or she must only have a good faith belief that the practice is unlawful." *See e.g. Booker v Brown and Williamson*, 879 F2d at 1312-13. In *Trujillo v Henniges Auto Sealing Sys N Am., Inc*, 495 F. App'x 651, 656 (6th Cir 2012), the plaintiff alleged that a senior manager made racially-oriented comments, some of them rather severe. In that case, there was no dispute that the comments upset the plaintiff, insofar as he sought out a manager to voice his concerns. The court reasoned that "a reasonable person in the plaintiff's position, particularly one without legal training, could conclude that [the] comments constituted hostile environment discrimination in violation of Title VII." *Trujillo*, *supra* at 656.
>
> The same is true here where Plaintiff articulated a good-faith belief that Sturgill was engaging in harassment when she made the disparaging remarks about Hassan and his brother's name conveniently sounding the same. For these reasons, Plaintiff has unequivocally established that he engaged in a protected activity.

[Docket No. 16, PgID 382-33]

The Court is not persuaded by Plaintiff's argument that he engaged in protected activity. The Court concludes that, as it must for purposes of Defendant's summary judgment motion, Plaintiff complained about Sturgill's comment, both to her in the June 11, 2013 interview and to others immediately after leaving the interview. Plaintiff admits, however, that he did not state at any point prior to his termination that: (1) he felt Sturgill's comment was offensive on the basis of, or constituted, racial, ethnic, or religious discrimination, or (2) constituted

discrimination on the basis of any other protected class. Plaintiff simply stated that he was offended and felt harassed.

The Court notes that the key facts of each of the cases cited by Plaintiff in support of his argument that he engaged in protected activity are inapposite to the facts of this case. In each of those cases (in contrast to this one), the plaintiff specifically complained that the defendant engaged in conduct that discriminated against certain person(s) on the basis of a protected class. *See, e.g., Laster v. City of Kalamazoo*, 746 F.3d 714, 722 (6th Cir. 2014) (plaintiff made several complaints of harassment and discrimination that was "based on race"); *Johnson v. Univ. of Cincinnati*, 215 F.3d, 579-581 (6th Cir. 2000) (plaintiff made several internal complaints that hiring practices discriminated against women); *EEOC v. New Breed Logistics*, 783 F.3d 1057, 1068 (6th Cir. 2015) (plaintiffs demanded that supervisor stop his sexually harassing conduct); *Trujillo*, 495 F. App'x at 653 (plaintiff complained that supervisor said "inappropriate or derogatory things about other races").

The Court finds that Sturgill's comment, on its face, is consistent with (albeit expressed in a different manner) Plaintiff's statement to which she was responding, *i.e.*, that the names "Hassan" and "Hussein" sound similar. Importantly, it was Plaintiff who raised the premise that Pratt had mistaken the identity of the caller who sought to activate HB's phone from the "do not activate" list. Sturgill's comment,

although not sympathetic, seemingly recognized that Plaintiff's and his brother's names did sound similar. Without more, however, Plaintiff's statement or Sturgill's remark is no different from a situation where the names involved sound similar (*e.g.*, "Tim" and "Jim") and can be easily confused by a person receiving the phone call.

In this case, there is no evidence that Sturgill's remark was tied to, or stemmed from, any protected class to which Plaintiff might belong. The Court finds that the fact that Plaintiff complained that Sturgill's comment was inappropriate or offensive did not connote to Defendant – or put Defendant on notice – that Plaintiff was complaining that he was discriminated against or harassed on the basis of a protected status. Rather, without more, the Court concludes that Plaintiff's complaints simply communicated that he did not like the manner in which Sturgill and Brooks were "interviewing" him.

Plaintiff argues that Sturgill's statement that Plaintiff's suggestion that Pratt had confused his name with his brother's name was "convenient" was discriminatory because Hassan and Hussein are Muslim names. At his deposition, Plaintiff explained that, if Muslim parents name their first son Hassan, they almost automatically name their second son Hussein. For that reason, according to Plaintiff, it was the "worst thing that you can tell someone [who is Muslim] that just because your brother's name is Hussein and yours is Hassan, that's convenient." [Docket No. 12, Ex. 1, at 15-16] There is no evidence in the record that Sturgill, Ritchie, Brooks,

16

or any other person involved in any decision regarding Plaintiff's termination had knowledge or familiarity with any of the background Plaintiff offered at his deposition (long after his termination). Plaintiff acknowledged that he did not give the background regarding the names Hassan and Hussein (or why he was offended by Sturgill's comment in the context of his religion) to Sturgill, Brooks, Ritchie, Bunch, Alertline, or anyone at Defendant. In other words, there is no evidence that anyone involved in the decision to terminate Plaintiff was aware of the issue that offended Plaintiff prior to his termination.

Absent any evidence of discrimination, the Court concludes that Plaintiff: (1) cannot demonstrate that he engaged in any activity protected under Title VII or ELCRA, and (2) has failed to satisfy the first element of a *prima facie* case. The Court dismisses Plaintiff's claim of retaliation pursuant to Title VII and ELCRA. As Plaintiff has no remaining claims before this Court, the Court will also dismiss Plaintiff's cause of action.

## V. CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 12, filed May 22, 2015] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's cause of action is **DISMISSED WITH PREJUDICE.**

                                           s/Denise Page Hood
                                           DENISE PAGE HOOD
                                           UNITED STATES DISTRICT JUDGE

DATED: March 31, 2016

---

**Proof of Service**

The undersigned certifies that a copy of the foregoing **Order** was served on the attorneys and parties of record herein by electronic means or U.S. Mail on March 31, 2016.

                                s/LaShawn Saulsberry
                                Case Manager to
                                Chief Judge Denise Page Hood